IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BRANDON RICARDO SMITH,

     Plaintiff,

v.                              CASE NO. 1:21-cv-156-AW-GRJ

CITY OF GAINESVILLE,

     Defendant.

_____/

## ORDER AND REPORT AND RECOMMENDATION

Defendant removed this state court failure-to-accommodate, hostile work environment/constructive discharge, and retaliation lawsuit brought under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and *pro se* Plaintiff amended his complaint thereafter, ECF No. 10.

Now pending before the Court are the following motions: (1) Plaintiff's Motion to Strike Affidavits of Steve Varvel, Michelle Martin, Frederick Mayer, and Roy Darnold, ECF No. 45; (2) Defendant's Motion to Dismiss for Failure to Comply with this Court's Orders, ECF No. 32; and (3) the parties' cross-motions for summary judgment, ECF Nos. 26, 35.  Upon due consideration, the Court concludes that all pending motions are due to be denied except for Defendant's Motion for Summary Judgment, ECF No. 35. Defendant is entitled to summary judgment on all claims because Plaintiff

In light of the Court's summary judgment recommendations, Defendant's Motion to Dismiss is **DENIED as moot**. Finally, for the reasons discussed below, the Court **DENIES** Plaintiff's Motion to Strike.

## I. BACKGROUND FACTS

Plaintiff, Brandon Ricardo Smith ("Smith") is a former transit bus driver who was employed by the City of Gainesville ("City") from May 27, 2019, to March 9, 2021.  ECF No. 10 ¶ 13. This dispute concerns the City's 2020-2021 face mask policy implemented in response to the COVID-19 pandemic.  In the Amended Complaint, Smith alleges that his speech impediment and social/emotional disabilities entitled him to an ADA accommodation not to wear a face mask while at work, which the City required absent medical excuse.  By requiring Smith to wear a face mask at work, Smith alleges that the City (1) failed to accommodate his disabilities; ECF No. 10 at 10-14; (2) created a hostile-work-environment that led to his constructive discharge, *id*. at 14-16; and (3) retaliated against him by suspending him without pay for violating the City's face mask policy. ECF No. 10 at 16-19.  For relief, Smith seeks monetary damages in the amount of $200,000.  *Id*. at 20.

## II.    SUMMARY JUDGMENT STANDARD

A reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

In the Eleventh Circuit, "[e]ven after *Celotex*, it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.* "Instead, the moving party must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial." *United States v. Four Parcels of Real Property in Green and*

*Tuscaloosa Counties in the State of Alabama*, 941 F.2d 1428, 1438 n.19

(11th Cir. 1991). The reason underlying this requirement is simple:

> [A] movant generally does not satisfy its initial burden simply by
> pointing out to the court that the materials produced in formal
> discovery or the materials in the court file, as they might be
> constituted following the filing of the defendant's motion, *do not
> include* evidence of every essential element of a plaintiff's claim.
> While a plaintiff has the burden to prove its claim *at trial,* Rule 56
> does not imply that a plaintiff has a freestanding obligation to
> reduce to a tangible form and disclose evidence relative to every
> element of its case *prior* to trial, to "prove its case in discovery,"
> so to speak.

*Am. Hospice, Inc. v. Sebelius*, No. 1:08-cv-1879-JEO, 2010 WL 9013005,

at *10 (N.D. Ala. Jan. 27, 2010) (emphasis in original).

If the moving party meets its burden, the non-moving party is then

required "to go beyond the pleadings" and present competent evidence

"showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

Generally, "[t]he mere existence of a scintilla of evidence" supporting the

non-movant's case is insufficient to defeat a motion for summary

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If, in

response, the non-moving party does not sufficiently support an essential

element of his case as to which he bears the burden of proof, summary

judgment is appropriate. *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232

F.3d 836, 840 (11th Cir. 2000). A fact is "material" for these purposes if it

"might affect the outcome of the suit under the governing law." *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"In determining whether genuine issues of material fact exist, [the reviewing court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Rice-Lamar*, 232 F.3d at 840 (*citing Anderson*, 477 U.S. at 255). However, when the record "taken as a whole" could not support a reasonable finding for the non-movant, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Finally, while *pro se* pleadings are liberally construed, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) (citations omitted). Thus, "[a]lthough [the courts] show leniency to *pro se* litigants, [they] will not serve as de facto counsel, or rewrite an otherwise deficient pleading in order to sustain an action." *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x. 296, 298 (11th Cir. 2009) (citation and internal marks omitted).

### III.    DEFENDANT'S EVIDENCE

The City's Regional Transit System ("RTS") implemented a policy requiring its employees to wear a face covering while at work to protect employees and customers during the COVID-19 pandemic.  Affidavit of Roy Darnold ("Darnold Aff."), ECF 43-2 ¶¶ 3, 4; *see* ECF No. 28-2.  Face mask usage was specifically required "[i]nside all city vehicles with multiple occupants." ECF No. 28-2. at 1. If an RTS employee could not wear a face covering due to medical issues, then the employee was required to provide Employee Health Services ("EHS") with documentation from a licensed medical professional establishing why they could not comply with the policy.  *Id.*  Further, the City would place an employee seeking an exemption from the mask policy on PTO leave (not COVID leave) until EHS cleared the employee to return to work. *Id.*  To return to work, the employee had to obtain a "return to work authorization" from EHS.  *Id.*  RTS employees were also notified that failure to comply with the face mask policy could result in progressive disciplinary action, up to and including dismissal." *Id.*

An updated version of the policy was given to all RTS transit operators on August 11, 2020.  Darnold Aff. ECF No. 43-2 ¶ 6.  That memo stated that "RTS Transit Operators are required to wear a face mask while

6

operating bus service.  Operating a bus constitutes any time the bus is in service with or without passengers on board, in motion or not.  RTS employees who board a bus in service for ANY reason, are required to wear a face mask." *Id.* (emphasis in original).  Smith acknowledged receiving a copy of the updated policy on August 29, 2020.  ECF No. 28-3; Darnold Aff. ECF No. 43-2 ¶ 7.

Two months after Smith acknowledged receipt of the updated policy, a complaint was posted to the RTS Facebook page that the driver of Route 37 was not wearing a face covering.  *Id*. ¶ 8; ECF No. 28-4. Bus video from November 1, 2020, confirmed that Smith, the driver of Route 37, was not wearing a face mask while operating the bus that day. Darnold Aff., ECF No. 43-2 ¶ 10. The following day (November 2, 2020), Smith's supervisor encountered Smith and found Smith not wearing a face mask while on duty on the bus.  *Id*. ¶ 11; *see also* Statement of Joseph Ferguson, ECF No. 27-6.   The supervisor instructed Smith to put on a face mask.  Darnold Aff., ECF No. 43-2 ¶ 11.  Smith became confrontational and did not comply with the supervisor's directive.  *Id*.  Instead, Smith informed RTS's Control Center that he needed a relief driver.  Darnold Aff., ECF No. 43-2 ¶ 11; *see also* Statement of Joseph Ferguson, ECF No. 27-6.  Smith then exited the

bus and walked off the job, even though three (3) passengers were on board awaiting bus service.  Darnold Aff., ECF No. 43-2 ¶ 11.

A review of the bus video from November 2, 2020, showed that Smith never raised any medical issue or disability that prevented him from wearing a face mask.  Darnold Aff., ECF No. 43-2 ¶ 13.  Instead, Smith acknowledged to his supervisor that face mask usage was required, arguing that he just needed more time to put one on.  *Id*.  The November 2, 2020, video also showed that Smith's actions and attitudes toward his supervisor, along with Smith's choice of words, were "cause for discipline for insubordination."  *Id*. ¶ 15.

On November 4, 2020, RTS Operations Manager, Roy Darnold ("Darnold"), prepared an Employee Notice and forty (40) hour suspension for Smith citing insubordination based on Smith's November 2nd actions.  Darnold Aff., ECF No. 43-2 ¶ 16. The November 4, 2020 disciplinary notice remarked that:

> Brandon Smith was in violation of the Alachua County EMERGENCY ORDER NO. 2020-5 and RTS Face Mask Requirements by not wearing a facial covering while on a transit bus.  He was insubordinate to the Transit Operations Supervisor, who informed him of the violation, by arguing and refusing to put a on a mask.  Brandon Smith is advised that continued violations of this nature will result in disciplinary action, up to and including dismissal.

ECF No. 39 at 59.[1]  Early the following morning (November 5, 2020),

Smith e-mailed Darnold, stating that he did not have to wear a face mask

due to an unspecified medical condition.  ECF No. 28-11 at 1.  Smith also

said that, under the ADA, he did not need to document his medical

condition with a doctor's note as required by RTS, as the ADA required

only that Smith's medical condition be "demonstrated."  *Id.*  Smith further

complained about his supervisor's threat to discipline him for not wearing a

face mask.  *Id.* ("You shouldn't immediately assume a driver doesn't have

any … medical conditions covered under the ADA.  Because wrongfully

disciplining a RTS driver employee for not wearing a mask, that's covered

under the ADA; would put the City of Gainesville and RTS in a lot of legal

trouble.").

Mid-day (November 5, 2020), Darnold replied to Smith as follows:

Per your e-mail, you are stating that you have a medical
condition that exempts you from wearing a facial covering.  This
would include while you are performing your duties as an RTS
Transit Operator.  With this new information, you are required to
report to Employee Health Services.  I will place you off the
schedule using your PTO bank until EHS clears you back to
work.

---

[1] Assistant Transit Operations Manager, Frederick Mayer, e-mailed the disciplinary
notice to union representatives on November 5, 2020, so they could provide Smith with
a copy.  Affidavit of Frederick Mayer ("Mayer Aff."), ECF No. 43-10 ¶¶ 4, 5. Smith was
provided with a copy of the notice on November 13, 2020.  ECF No. 10 ¶ 33.

ECF No. 43-8 at 5; Darnold Aff. ECF No. 43-2 ¶ 18.[2]

The next day (November 6, 2020), Smith e-mailed Darnold, informing him that EHS had cleared him to return work.  ECF No. 43-1. In that e-mail, Smith confirmed that he would wear a face mask "whenever I'm on the bus."  *Id*.; Darnold Aff. ECF No. 43-2 ¶ 19. Smith further explained that "EHS … informed me to just wear my mask, to avoid this unnecessary confusion in the future.  So I'll ensure to wear my mask while at work, although I never told you I didn't want to wear a mask."  ECF No. 43-1. Despite agreeing to wear a face mask while on the job, Smith told Darnold that he intended to go forward with his discrimination and retaliation complaints.  *Id*.

The next day (November 7, 2020), Darnold placed Smith back on the work schedule because Smith agreed to wear a face mask as required by RTS policy.  Darnold Aff. ECF No. 43-2 ¶ 19.  On November 11, 2020,

---

[2] The City's Risk Management Director, Steven Varvel, was also copied on the November 5, 2020 e-mail, and replied instructing Smith to provide EHS with documentation to support his medical condition as EHS would not be able to give Smith a return to work form without it.  Affidavit of Steven Varvel ("Varvel Aff."), ECF No. 43-5 ¶ 7; ECF No. 28-11 at 2.  Smith replied to all, claiming "[t]his is a retaliatory act—and you're violating every guideline and law.  I don't have to report to EHS for merely saying that I have a medical condition that doesn't require me to wear a mask….  If my PTO bank is used, and I'm not placed on schedule for my work week, starting tomorrow on Friday, I'll be seeking legal matters against RTS and the City of Gainesville."  ECF No. 28-11 at 3.  Varvel responded, "I am trying to facilitate your return to work.  This is the same process followed for other restrictions related to work."  *Id*.

Smith filed a claim with the Florida Commission on Human Relations,

alleging discrimination under the ADA, the Florida Civil Rights Act and Title

VII.  Pertinent to this action, Smith alleged that:

> I am an individual with a disability.  I was discriminated against
> due to my disability…. On November 2, 2020, I was threatened
> with negative disciplinary action (being written up) for not
> wearing a mask while operating the bus.  I told management I
> have a disability that triggers disability related episodes if I have
> on a mask.  On November 5, 2020, I was disciplined, and I was
> sent to Employee Health Services to be evaluated by nurses.  I
> was told I could not return to work until a clearance was
> received regarding my disability.  On November 13, 2020, I was
> disciplined in retaliation for my disability.  I was told I was being
> insubordinate for not wearing my mask.  Management was
> aware of my disability and my need for an accommodation and
> it was ignored, they chose to retaliate against me instead of
> accommodating me.

ECF No. 27-1.  Smith lodged a similar complaint regarding the November

2020 disciplinary action and events with the City's Office of Equity and

Inclusion on December 9, 2020.  ECF No. 27-18.

Two months later, on February 13, 2021, Smith filled out a City

Reasonable Accommodation Request Form, in which he stated, in relevant

part that:

>  Mr. Smith has (3) disabilities/handicaps with documented
> medical records from licensed Psychologist.  He's requesting
> an ADA accommodation to not wear a mask while operating the
> transit bus.  If he wears a mask while operating the transit
> bus—it'll trigger disability episodes.  The documented
> disabilities/handicaps are:  Emotionally handicap, Speech
> Impairment Disability, and Socially handiclap (sic).

11

> Mr. Smith's speech impairment disability, emotional handicap
> disability, and social handicap disability all affects his major life
> activities of "breathing, speaking, interacting, and
> communicating with others.["]

ECF No. 28-15 at 1-2.

This time, Smith supported his claims of disability with a copy of a

February 20, 2001, Report and Plan ("R&P") prepared on behalf of the

Alachua County School Board while Smith was in Eighth grade. *See* ECF

No. 33-12 at 1-2.   In that report, the licensed psychologist who prepared

the R&P made no disability findings.   Rather, she opined that Smith

functioned in the Average range of academic skills and in the excepted

range for intelligence.   *Id*. at 1.   The doctor also noted that Smith exhibited

"aggressive and delinquent behaviors as well as poor attention, thought

problems[.]" ECF No. 33-12 at 1.

EHS Occupational Health Nurse, Shawn D. Daniels, MSN, RN

("Daniels") reviewed the 2001 R&P and notified Smith that it was outdated

and provided no support for his accommodation request.   ECF No. 28-16.

Daniels asked Smith to provide EHS with more up-to-date documentation

so EHS could evaluate his request.   *Id*.   Smith never supplied any such

documentation to EHS.   Deposition of Brandon Ricardo Smith ("Smith

Depo."), ECF No. 33-5 at 105-07 (Q: Did you provide anymore

documentation to Shawn Daniels or any other employee health services after [her e-mail requesting more documentation]?" A. …No.").

On March 9, 2021, Smith "voluntarily resigned" his position with the City, citing a hostile work environment under the ADA.  ECF No. 39 at 73.

## IV.    PLAINTIFF'S EVIDENCE

As for Smith's evidence, Smith attached the same ten (10) unauthenticated exhibits to his Motion for Summary Judgment, ECF No. 26-1 at 27-64, as he attached to his opposition memorandum, ECF No. 39 at 43-85. The unauthenticated exhibits include (1) a March 9, 2021, e-mail from Smith to the City's HR Department, resigning his position, *id*. at 44; (2) a bus transcript of Smith's conversation with his supervisor on November 2, 2020, *id*. at 47-50; (3) Darnold's Affidavit, *id*. at 52-56; (4) a copy of Smith's November 4, 2020, disciplinary notice, *id*. at 58-59 (5); Verizon logs of telephone calls made or received by Smith between November 4 and November 6, 2020, ECF No. 39 at 61; (6) e-mail exchanges between Smith and his union representative on November 17, 2020, *id*. at 63-64; the 2011 R&P, *id*. at 66-7; (7) Smith's handwritten Individual Educational Plan dated November 3, 2005, in which Smith writes that his primary exceptionality is "Emotionally Handicapped", *id*. at 68; (8) Smith's March 9, 2021, resignation letter, *id*. at 73; (9) a copy of Alachua County Emergency Order

No. 2020-59, *id.* at 75-8; and (10) a copy of Florida Statute § 252.38 (2021), *id*. at 83-85.  Upon review, none of these exhibits supports Smith's claims.  To the contrary, they support the City's positions that Smith is not disabled; that Smith was not entitled to an ADA accommodation; that the City disciplined Smith for insubordination rather than as retaliation; and that Smith resigned voluntarily.

Rather than support his case by way of his own sworn affidavit or other evidence, Smith moves to strike Defendant's affidavits.[3]  Thus, it appears that Smith hopes to deprive the City of its evidence at the summary judgment stage in order to create a genuine issue of material fact.  That Smith cannot do.

In his Motion to Strike, Smith contends that the affidavits of City employees Steve Varvel, Michelle Martin[4], Frederick Mayer, and Roy Darnold should be stricken for two reasons.  First, Smith complains that the

---

[3] In its Summary Judgment Notice, the Court warned Smith that "all material facts asserted in [Defendant's] motion will be considered admitted unless controverted by proper evidentiary materials (*e.g.*, Plaintiff's sworn counter-affidavit, other witnesses' sworn counter-affidavits, depositions, exhibits, etc.)."  ECF No. 31 at 2.  The Court further cautioned Smith that he "may not rely solely on the allegations of the issue pleadings (*e.g.*, complaint, answer, etc.) in opposing the summary judgment motion. *Id*.

[4] Michelle Martin did not provide an affidavit for this case.  Martin's name only appears on the docket as Defendant's Attorney who received a copy of Smith's Initial Disclosures, as certified by him.  *See* ECF No. 43-12 at 6.  As a result, there is no Michelle Martin affidavit to strike.

affidavits were not disclosed to him during discovery, pointing out that the affidavits are dated after the discovery period ended. ECF No. 45.  That argument is without merit.  Parties are entitled to file previously undisclosed affidavits that post-date the discovery period in support of their dispositive motions.  Indeed, that is standard litigation practice; the Court's Scheduling Order contemplates as much.  *See* ECF No. 15 at 2 (dispositive motions due three weeks after the close of discovery).  Parties use evidence gathered during the discovery phase to fashion affidavits in support of dispositive motions.  Thus, the City had no duty to provide its affidavits before filing the instant motion as long as the affiants were previously disclosed as potential witnesses.

That is where Smith's second argument comes in.  Smith says that the affidavits must be stricken because the City did not disclose the employees as witnesses as required by Federal Rule of Civil Procedure 26.  Smith is correct that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).  Yet here, Smith admits that "Defendant did in fact list and name Roy Darnold, Steve Varvel, and Frederick Mayer in its initial

disclosures; as witnesses and individuals likely to have discoverable information." ECF No. 45 at 9. Consequently, the City may use the Darnold, Varvel and Mayer affidavits in support of its motion for summary judgment.

In sum and for these reasons, the Court denies Smith's motion to strike the Darnold, Varvel, and Mayer affidavits. In light of this ruling, the only evidence before the Court for resolving the parties' motions for summary judgment is the City's authenticated exhibits submitted in support of its motion.

## V.   DISCUSSION

The heart of the City's argument is that because Smith failed to establish that he is disabled under the ADA, he has no ADA claims. The Court agrees. Because Smith does not meet the threshold requirement that he is disabled, the City is entitled to summary judgment on all claims.

### A.   Plaintiff failed to provide any evidence that he is disabled as contemplated under the ADA.

Smith points to his November 5, 2022, e-mail and his February 13, 2021, accommodation request as support for his allegation that he is disabled. Obviously, Smith's self-serving and unsupported statements do not establish that he is disabled. Furthermore, Smith failed to identify any medical record or other documentation showing that he has a disability that

16

required accommodation.

The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1) (2009).   Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  To be substantially limited in a major life activity is defined as having "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  *Carrol v. Neumann*, 204 F. Supp. 2d 1344, 1354 (S.D. Fla. 2002) (*citing Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 690, 151 L.Ed.2d 615 (2002)).  If a plaintiff claims to be substantially limited with respect to the life activity of working, that plaintiff must establish that his impairment leaves him "unable to work in a broad class of jobs." *Id.* (*citing Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)).

In this case, Smith's bare assertions that his speech impediment coupled with social and emotional issues render him disabled are

17

insufficient. Smith has not introduced any evidence that his doctors, or anyone else, gave him reason to consider his alleged conditions as impairing his ability to work in a long term or permanent way. Moreover, the record reflects that Smith's conditions did not leave him unable to work in a broad class of jobs.  In fact, Smith drove the City's transit bus for nine (9) months while the RTS mask policy was in effect.

Accordingly, Smith's alleged medical conditions did not restrict Smith's ability to perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breath, learn, read, concentrate, think, communicate, or work. Without presenting any evidence that his alleged conditions leave him unable to work a broad class of jobs or otherwise impairs a major life activity, Smith failed to establish a genuine issue of material fact regarding whether he is disabled. The City is therefore entitled to summary judgment on all claims.

And, even if Smith had established that he is disabled, his failure-to-accommodate, hostile work environment/constructive discharge, and retaliation claims still fail for the reasons discussed below.

## B.    Smith failed to provide the City with sufficient notice that he needed an accommodation.

Smith relies solely on his November 5, 2020[5], e-mail to Darnold to support his failure-to-accommodate claim.[6]  ECF No. 10 at 10-14. In that e-mail, Smith informed Darnold that he had an unspecified medical condition that entitled him to operate the City bus without wearing a mask. Even if this communication had established that Smith was disabled (which it does not), the e-mail did not provide the City with sufficient notice that Smith required an accommodation.

An employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."

_____

[5] Even though Smith does not rely on his February 13, 2021, accommodation request to support his failure-to-accommodate claim, that request does not support such a claim either. EHS attempted to accommodate Smith's 2021 request, but Smith never supplied any documentation to support his need for an accommodation. Moreover, Smith did not seek review of his 2021 accommodation request at the administrative level, so this Court may not review any claims associated with it.  A plaintiff asserting discrimination under the ADA must first exhaust their administrative remedies before bringing suit in district court. 42 U.S.C. § 12117(a); E.*E.O.C. v. Joe's Stone Crabs, Inc*., 296 F.3d 1265, 1271 (11th Cir. 2002). "[A] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.*" Gregory v. Ga. Dep't of Human Res*., 355 F.3d 1277, 1280 (11th Cir. 2004). Smith's 2021 accommodation request does not reasonably grow out of the discrimination charge he filed with the Florida Commission on Human Relations on December 11, 2020, *see* ECF No. 27-1 at 1, so the Court cannot review it.

[6] To state a *prima facie* claim for failure to accommodate, the plaintiff must show that: (i) he is disabled; (ii) he is a qualified individual; and (iii) he was discriminated against by defendant's failure to provide a reasonable accommodation. *See Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1255 (11th Cir. 2001).

19

*Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363 (11th Cir. 1999).  Indeed, "before an employer's duty to provide reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice." *E.E.O.C. v. C.R. England, Inc.,* 644 F.3d 1028, 1049 (10th Cir. 2011); *see also Calero-Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 23 (1st Cir. 2004) (request for accommodation "must be sufficiently direct and specific" to give rise to employer's duty to provide reasonable accommodation) (citation and internal quotation marks omitted).

Smith's November 5, 2020, e-mail was neither sufficiently direct nor specific enough to give rise to the City's duty to provide Smith with a reasonable accommodation.  Moreover, that very day (November 5, 2020), Darnold attempted to accommodate Smith by referring him to EHS so EHS could evaluate his claim.  As a result, the City did not fail to accommodate Smith, even when Smith presented the City with defective notice of a possible disability.  Notably, when offered the opportunity to establish his need for accommodation, Smith failed to provide documentation showing that he had a disability that prevented him from complying with the RTS mask policy.  Instead, Smith returned to work within two days of the

20

November 5, 2020, e-mail, agreeing to wear a mask while operating the bus.  On these facts, Smith has no failure-to-accommodate claim even if he had been disabled.

**B.    Plaintiff's retaliation, hostile-work-environment and constructive discharge claims fail on other grounds as well.**

Smith says that the City retaliated against him by suspending him without pay after he requested an ADA accommodation.  Smith also asserts hostile-work-environment and constructive discharge claims, arguing that he was forced to resign because his supervisors harassed him and threatened disciplinary action when he failed to comply with RTS's mask policy.  ECF No. 10 at 14-15.  Even if Smith were disabled (which he is not), these claims, too, fail.

*1.    Smith failed to establish that he engaged in a protected activity that caused the City to discipline him, so his retaliation claims fail on those grounds as well.*

To state a case of retaliation under the ADA, a plaintiff must show (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997).  The Court analyzes ADA retaliation claims using the same framework applied to retaliation

21

claims under Title VII. *Id.* (citation omitted). Therefore, to satisfy the first element of the *prima facie* case, it is sufficient that an employee has a good faith, objectively reasonable belief that his activity is protected by the statute. *See, e.g., Little v. United Technologies,* 103 F.3d 956, (11th Cir. 1997) (employee claiming retaliation for opposing employer's conduct must have good faith, objectively reasonable belief that such conduct was unlawful under Title VII); *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir. 1998) (employee claiming retaliation for filing EEOC complaints had reasonable belief that employer violated the ADA and ADEA).

Smith contends that his request for an ADA accommodation constituted protected activity. In this context, it would be sufficient for Smith to show that he had a good faith, objectively reasonable belief that he was entitled to an accommodation under the ADA. He cannot show this, however. Smith has not produced any evidence that, at the time that he requested an ADA accommodation, his belief that he was disabled was objectively reasonable. He merely asserts that his speech impediment and emotional and social issues constituted a disability, without any grounds for the conclusion. Accordingly, Smith's accommodation requests did not constitute protected activity under the ADA.

Additionally, Smith cannot meet the necessary "but for" element to state a claim for retaliation. The record clearly establishes that Smith's supervisor decided to discipline Smith for non-compliance with the RTS face mask policy, insubordination, and for walking off the job on November 4, 2022.  It is undisputed that Smith first raised the ADA question with the City on November 5, 2022.  Because the decision to suspend Smith occurred prior to the City's having notice of any potentially protected disability, Smith's suspension did not occur "but for" his alleged accommodation request.

In sum, no genuine issue of material fact exists on Smith's retaliation claim, so the City is entitled to summary judgment on that claim.

> 2. *Smith failed to establish that he engaged in a protected activity that caused the City to discipline him, so his hostile-work-environment claims fail on those grounds as well.*

To state a retaliatory hostile-work-environment claim, a plaintiff must also show that: (1) he engaged in protected activity, (2) after doing so, he was subjected to unwelcome harassment, (3) his protected activity was a "but for" cause of the harassment, and (4) the harassment was sufficiently severe or pervasive to alter the terms of his employment. *Baroudi v. Sec'y, U.S. Dep't of Veterans Affairs*, 616 F. App'x 899, 904 (11th Cir. 2015) (per curiam) (*citing Gowski v. Peake*, 682 F.3d 1299, 1311-12 (11th Cir. 2012)).

Further, a plaintiff must show that the alleged "mistreatment" he endured "'might have dissuaded a reasonable worker from making or supporting a charge' under the ADA." *Williams-Evans v. Advance Auto Parts*, 843 F. App'x 144, 149 (11th Cir. 2021) (per curiam) (quoting *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020)).

    For the reasons discussed above, Smith cannot establish that he engaged in a protected activity, or that the City's disciplinary action was caused by his "request" for an accommodation. Without these elements, Smith has no retaliatory hostile-work-environment claim, and the City is entitled to summary judgment on this claim.

    3.    *Smith was not constructively discharged.*

    Smith's constructive discharge claim fails as well, even if he had been disabled. In support of this claim, Smith testified that he "voluntarily resigned" because his supervisors were monitoring his mask policy compliance by surveilling him and because supervisors told Smith in front of other transit operators to put on his face mask, ECF No. 33-5 at 34:7-14, which was "Kinda' annoying" *id.* at 34:14. These allegations are woefully insufficient to establish constructive discharge.

    The standard for proving constructive discharge is higher than for proving a hostile work environment. *See Hipp v. Liberty Nat'l Life Ins. Co.*,

252 F.3d 1208, 1231 (11th Cir. 2001).  To prove constructive discharge

under the ADA, "a plaintiff must demonstrate that working conditions were

'so intolerable that a reasonable person in her position would have been

compelled to resign.'"  *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1283-84

(11th Cir. 1999).  Moreover, the plaintiff must show that the employer

intentionally rendered the employee's working conditions intolerable.

*Henson v. City of Dundee*, 682 F.2d 897, 907 (11th Cir. 1982).  A

constructive discharge claim is "not a jury question unless a plaintiff

presents substantial evidence that employment conditions were

intolerable."  *Siudock v. Volusia Cty. Sch. Bd.*, 568 F. App'x 659, 664 (11th

Cir. 2014) (per curiam) (citation omitted).  Finally, a plaintiff is obligated to

provide an employer with sufficient time to remedy a situation before a

constructive discharge will be found.  *Kilgore v. Thompson & Brock Mgmt.,*

*Inc.*, 93 F.3d 752, 754 (11th Cir. 1996).

In this case, Smith has not presented any evidence, let alone

substantial evidence, that his employment conditions were intolerable.  The

fact that Smith's supervisor "harassed" him to wear a face mask does not

constitute harassment because it was the responsibility and duty of Smith's

supervisor to monitor Smith's compliance with the RTS mask policy.

Moreover, Smith's refusal to comply with the mask policy or show why he

was exempt from it led to increased "surveillance" for good reason.  Smith was apparently a serial violator of the policy, without excuse.  A supervisor's fulfilling his supervisory duties does not create working conditions so intolerable that a reasonable person in Smith's position would be compelled to resign.

Additionally, Smith testified that he preemptively resigned on May 9, 2021, because he knew he was going to be disciplined for repeatedly not wearing a face mask.  Smith Depo., ECF No. 33-5 at 34:1-4.  *See Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987) (denying constructive discharge where employee assumed she would be fired and therefore quit, noting that "part of an employee's obligation to be reasonable is an obligation not to assume the worst."); *Jones v. Allstate Ins. Co.*, 707 F. App'x 641, 646 (11th Cir. 2017) ("Plaintiff's decision to voluntarily resign in the face of possible termination is not constructive discharge.").  Smith's decision to resign in the face of possible discipline defeats Smith's constructive discharge claim.

In sum, the undisputed record evidence establishes that Smith voluntarily resigned. Moreover, Smith has failed to provide substantial evidence that his working conditions were intolerable.  Accordingly, the City is entitled to summary judgment on his constructive discharge claim.

26

## VI.  CONCLUSION

In view of the foregoing and upon due consideration, it is **ORDERED**

that:

1.    Plaintiff's Motion to Strike, ECF No. 45, is **DENIED**.

2.    Defendant's Motion to Dismiss, ECF No. 32, is **DENIED as moot.**

It is further **RECOMMENDED** that Defendant's Motion for Summary

Judgment, ECF No. 35[7], should be **GRANTED** and Plaintiff's Motion for

Summary Judgment, ECF No. 26, should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida this 18th day of August 2022.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

---

[7] The ***Clerk*** is directed to **TERMINATE** Defendant's first Motion for Summary Judgment, ECF No. 27 **as moot**.

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.